**EXHIBIT C**




**Search Terms:** NARDONE

**Nardone** v. Mt. Cranmore CV-91-114-SD 08/13/91

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


Michelle **Nardone**, by and
through her next friend, her
father, Edward A. **Nardone**;
Edward A. **Nardone**;
Donna M. **Nardone**


v. Civil No. 91-114-D


Mt. Cranmore, Inc.


ORDER


Plaintiffs, residents of Rhode Island, bring this tort action against
defendant, the owner and operator of a skiing facility in North Conway,
New Hampshire, for injuries arising from a skiing accident that occurred
at defendant's facility. Plaintiffs seek damages in compensation for
plaintiff Michelle **Nardone's** past and future hospital care and physical,
mental, and emotional pain and suffering. Defendant moves to dismiss on
the ground that the New Hampshire "Skiers, Ski Area and Passenger Tramway
Safety" -law, New Hampshire Revised Statutes Annotated (RSA) 225-A, bars
plaintiffs' claims.

Background

The facts as alleged in the complaint are as follows. On March 19,
1988, while skiing at Mt. Cranmore, plaintiff Michelle **Nardone** was struck
by another skier and consequently collided with a snowmaking hydrant.
Plaintiffs allege that defendant negligently failed to cover the
snowmaking hydrant with a cap, placed the hydrant in a location which

created an unreasonable risk, failed to warn of the presence of the hydrant, and failed to install safety bumpers around the hydrant. Plaintiffs believe that a bucket, which was allegedly sitting in the snow near the hydrant at the time of the accident, should have been in place covering the hydrant.

Discussion

The outcome of this case turns on the scope and interpretation of RSA 225-A. The "Declaration of Policy" states that the statute was enacted in recognition of the fact that

the sport of skiing is practiced by a large number of citizens of the state of New Hampshire, and also that skiing attracts to the state of New Hampshire large numbers of non-residents significantly contributing to the economy of New Hampshire.

RSA 225-A:1.

2

The policy declaration goes on to point out that while the "primary responsibility for operation, construction, maintenance and inspection" of ski tows, lifts, jumps, and tramways rests with the ski area operators, the Legislature recognizes "that the sport of skiing and other ski area activities involve risks and hazards which must be assumed as a matter of law by those engaging in such activities, regardless of all safety measures taken by the ski area operators." Id.

Section 225-A:24 states that no skier may maintain an action against a ski area operator for any injuries which result from the inherent risks, dangers, or hazards of skiing. Specifically,

[t]he categories of such risks, hazards or dangers which the skier or passenger assumes as a matter of law include but are not limited to the following: variations in terrain, surface or subsurface snow or ice conditions; bare spots; rocks, trees, stumps and other forms of forest growth or debris; lift towers and components thereof (all of the foregoing whether above or below snow surface); pole lines and plainly marked or visible snow making equipment; collisions with other skiers or other persons or with any of the categories included in this paragraph.

RSA 225-A:24 I.
Because the skier assumes the risks inherent in skiing, ski operators can only be liable for accidents which occur as a

3

result of a violation of RSA 225-A1 or as a result of negligently failing to perform the responsibilities associated with the tramway itself. The Legislature's intent to limit ski area liability to downhill skiers was recognized by the New Hampshire Supreme Court in Adie v. Temple

Mt. Ski Area, 108 N.H. 480, 238 A.2d 738 (1968). In that case, which involved a claim of negligent ski instruction, the court held that the action was not statutorily barred because the statute did not regulate ski instruction. The court noted, however, that the statute bars an action against an operator by a downhill skier unless it is claimed the operator was in violation of the statute, which imposes duties to classify slopes and trails on which maintenance crews are working. Id. at 482-83.

Subsequent New Hampshire case law is consistent with this limitation. See Ford v. Black Mountain Tramways, 110 N.H. 20, 22 (1969) (ski operator liable for common law negligent

--------------------

1According to section 225-A:25 I,

Unless an operator of a passenger tramway is in violation of this chapter . . . , which violation is causal of the injury complained of, no action shall lie against any operator by any passenger or his representative; this prohibition shall not, however, prevent the maintenance of an action against the operator for negligent operation, construction or maintenance of the passenger tramway itself.

4

construction and maintenance of a passenger tramway itself); Bolduc v. Herbert Schneider Corp., 117 N.H. 566, 569 (1977) (absent any alleged violation of the chapter or the board's regulations, RSA 225-A prohibits any suit against the operator except for negligent construction or maintenance of a tramway or any building (court also refuses to extend strict liability doctrine to ski area operators)); Cowan v. Tyrolean Ski Area. Inc., 127 N.H. 397, 399 (1985) (New Hampshire Supreme Court inferred from 1978 amendment that Legislature had previously intended to exclude common law liability for negligent tramway operation).

In Counts I, II, and IV of their complaint, plaintiffs contend that defendant is liable for negligently failing to place the hydrant in a safe location and negligently failing to place a cap or safety bumpers around the hydrant which would have provided a buffer between Michelle and the hydrant.2

Plaintiff has failed to point to any provision within the statute or the board's regulations which requires the ski

--------------------

22Counts I and IV are essentially duplicative, with Count I alleging a failure to cover the hydrant with a "proper cap or covering device that would have provided a buffer," and Count IV alleging a failure to install " proper safety bumpers . . . which would have acted as a buffer." Count II alleges negligent placement of the hydrant.

5

operator to provide such a buffer. Nor do plaintiffs allege that the hydrant was not visible. Instead, plaintiffs' Memorandum in Support of Plaintiff's Objection to Defendant's Motion to Dismiss states that "[i]t is counsel's information and belief that . . . while a bucket was sitting in the snow next to the hydrant, presumably to be used to cover the hydrant and to protect people from injury, the bucket was not in place at the time of the injury."3

Even assuming the accuracy of plaintiff's presumption, the claim that the hydrant should have been padded or protected with the bucket or other buffer is unavailing. The statute does not require a ski operator to provide any buffer between a skier and any visible machinery on the slopes. 4 Moreover, courts in other jurisdictions with similar assumption-of-risk statutes for skiers have held that operators are not liable for a failure to pad operator equipment. See Northcutt v. Sun Valley Co., 117 Idaho

--------------------

3In support of their "bucket theory", plaintiffs have appended to their objection to the instant motion photocopies of photographs which purport to show both the bucket and the hydrant. The court, however, is unable to discern with any certainty the contents of the photocopies, and finds these unclear, uncaptioned exhibits to be of little value.

4It is not clear from plaintiffs' pleadings that the hydrant was on the trail. Count III alleges negligence in placement of the hydrant "in its proximity to the ski trail." (Emphasis added.)

6

351, 787 P.2d 1159 (1990) (ski operator not liable for failure to pad signpost placed in dangerous intersection); Badiukiewicz v. Tuthill Corp., No. 86-6451, slip op. (E.D. Pa. Dec. 12, 1988) (cited as 1988 W.L. 138723) ( ski operator not liable for failing to pad fence post supporting protective net); Leopold v. Okemo Mountain Inc., 420 F. Supp. 781 (D. Vt. 1976) (ski operator not liable for failing to pad chair lift tower beam). Because as a skier plaintiff assumed the risk of colliding with visible permanent equipment, defendant's failure to pad such equipment is a non-issue.
In Count III of their complaint, plaintiffs allege that defendant negligently failed to warn plaintiff of the "location and placement" of the hydrant with which plaintiff collided. In their memorandum, plaintiffs contend that Michelle was not warned of the hydrant's presence or its proximity to the ski trail. In support of this claim, plaintiffs rely on RSA 225-A:23 II(b), which states, "The ski area operator shall warn skiers and passengers by use of the trail board or otherwise, if applicable, that snow grooming or snowmaking operations are routinely in progress, on the slopes and trails serviced by each tramway."
In the court's view, this requirement does not apply to the instant situation. Here, it is not alleged that snowmaking

7

operations were in progress. Plaintiff collided with a fixed and permanent piece of equipment, legally analogous to a lift tower, with which plaintiff, as a matter of law, assumed the risk of collision, regardless of any safety measures undertaken by defendant. 5

Conclusion

RSA 225-A expressly limits a ski area's liability. Plaintiff's complaint fails to allege that defendant has breached any of its statutorily enumerated duties. Accordingly, defendant's motion to dismiss ( document no. 4) must be and herewith is granted. 6
SO ORDERED.


SHANE DEVINE
Chief Judge
United States District Court

August 13, 1991
cc: Louis J. Cattani, Esq.
Joseph M. McDonough III, Esq.

--------------------

5 The court also notes that RSA 225-A:24 provides that skiers assume the risk of collisions with other skiers. It is just such a collision which precipitated the plaintiff's accident.

6 Since the court grants defendant's motion to dismiss on the substance of plaintiffs' claim, it need not address the arguments relative to the statute of limitations.

8

Copyright © 1988 - 2005 ISYS Search Software