```
                 UNITED STATES DISTRICT COURT
                   DISTRICT OF NEW HAMPSHIRE
```

Susan Hanus and Michael Hanus,
individually and as the Parents
and Next Friends of M.H. and
J.H.

    v.                                Civil No. 13-cv-44-JL
                                       Opinion No. 2014 DNH 075
Loon Mountain Recreation Corp.,
Boyne USA, Inc., and Scott
Patterson

## MEMORANDUM ORDER

    Every winter, thousands of skiers and snowboarders journey to the slopes of New Hampshire's ski areas from locations both far and near.  Like many states with a robust ski industry, New Hampshire has enacted a statute--the "Skiers, Ski Area and Passenger Tramway Safety" law, N.H. Rev. Stat. Ann. § 225-A:1 et seq. (the "Ski Statute") that limits those areas' liability to their visitors.  In particular, the Ski Statute provides that "[e]ach person who participates in the sport of skiing . . . accepts as a matter of law, the dangers inherent in the sport, and to that extent may not maintain an action against [a ski area] operator for any injuries which result from such inherent risks, dangers, or hazards."  N.H. Rev. Stat. Ann. § 225-A:24, I.  The question presented in this case is the extent to which this provision immunizes ski areas from liability for skier-to-skier collisions caused by their employees.

Plaintiffs Susan and Michael Hanus have sued Loon Mountain Recreation Corporation ("LMRC") and Boyne USA, Inc., the operators of one of New Hampshire's ski areas, Loon Mountain Resort, for injuries the plaintiffs' minor son suffered while skiing. Those injuries arose from an on-trail collision between the boy and a Loon Mountain employee who, the plaintiffs allege, "ducked under a rope marking a permanently closed section of the trail" immediately before the collision. LMRC and Boyne have moved to dismiss the plaintiffs' claims against them, arguing that § 225-A:24, I--which expressly identifies "collisions with other skiers or other persons" as one of the "inherent risks, dangers, or hazards" of skiing--bars those claims. See Fed. R. Civ. P. 12(c).[1]

This court has jurisdiction under 28 U.S.C. § 1332(a)(1) (diversity), because the plaintiffs are Massachusetts citizens, the defendants are citizens of New Hampshire and Michigan, and the amount in controversy exceeds $75,000. After careful consideration, the court grants the defendants' motion. The plaintiffs have gamely attempted to pry this suit from the

---

[1] The defendants' motion relies upon Federal Rule of Civil Procedure 12(b)(6), but, because the defendants answered the complaint before moving to dismiss it, the court treats the motion as one for judgment on the pleadings under Rule 12(c)--a "largely academic" distinction since Rules 12(b)(6) and 12(c) "impose identical standards." Holder v. Town of Newton, 638 F. Supp. 2d 150, 152 n.1 (D.N.H. 2009); see also Part I, infra.

2

clutches of the Ski Statute's ski area immunity provision by arguing that the provision does not apply where, as here, the suit arises out of injuries caused by a ski area employee who fails to observe the responsibilities the Ski Statute imposes on skiers. This argument, however, cannot be reconciled with the broad language of the statute itself, nor with the case law interpreting it. Plaintiffs' claims against LMRC and Boyne must be dismissed.

## I.  **Applicable legal standard**

A motion for judgment on the pleadings under Rule 12(c) is evaluated under essentially the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim. See Simmons v. Galvin, 575 F.3d 24, 30 (1st Cir. 2009). To survive such a motion, the complaint must make factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In ruling on such a motion, the court must accept as true all well-pleaded facts set forth in the complaint and must draw all reasonable inferences in the plaintiff's favor. See, e.g., Martino v. Forward Air, Inc., 609 F.3d 1, 2 (1st Cir. 2010). The court "may consider not only the complaint but also "facts extractable from documentation annexed to or incorporated by reference in the

complaint and matters susceptible to judicial notice." Rederford v. U.S. Airways, Inc., 589 F.3d 30, 35 (1st Cir. 2009). With the facts so construed, "questions of law [are] ripe for resolution at the pleadings stage." Simmons, 575 F.3d at 30. The following background summary is consistent with that approach.

## II. Background

On February 3, 2011, the plaintiffs' thirteen-year-old son, "M.H.", was participating in a ski racing program at Loon Mountain. Accompanied by his younger sister, "J.H.", and the head coach for the program, M.H. had skied down the Rampasture trail and was headed, via a crossing trail, to the Coolidge Street trail, where he had helped set up a race course. At the same time, Scott Patterson, a ski instructor employed at Loon Mountain, was snowboarding down the Upper Northstar trail, which intersects with the crossing trail on which M.H. was skiing.

As he approached the area where the two trails intersect, Patterson, without stopping, ducked under a rope closing off a section of the Upper Northstar trail[2] and jumped a lip between

---

[2]The plaintiffs allege that this section of the Upper Northstar trail had been "permanently closed" since at least 2003. The defendants take issue with this characterization, arguing in their memorandum that "[t]here is no such thing as a 'permanently closed' ski trail under New Hampshire law." Memo. in Supp. of Mot. to Dismiss (document no. 28-1) at 3. Instead, the defendants assert, Loon Mountain had simply "put up a rope to delineate the intersections area" between the trails. Id. While

the trails.  While Susan Hanus watched from her seat on a chair lift above, Patterson struck M.H. in close proximity to J.H.  As a result of the collision, M.H. suffered severe injuries, including a concussion and fractured bones in his right arm and leg.

The plaintiffs filed this action against LMRC and Patterson, and shortly thereafter, amended their complaint to add Boyne as a defendant.  As amended, the complaint alleges claims against LMRC and Boyne for negligent supervision, negligent operation of a ski area, gross negligence, and respondeat superior; claims against Patterson for negligence and gross negligence; and a claim against all three defendants for negligent infliction of emotional distress.  LMRC and Boyne, after answering the complaint, filed the motion at bar.  (Patterson has not yet filed any motion seeking to dispose of the claims against him.)

III. **Analysis**

The Ski Statute "recogniz[es] that the sport of skiing and other ski area activities involve risks and hazards which must be

---

that may in fact be the case, this court is bound to accept as true the facts pleaded by the plaintiffs, see Martino, 609 F.3d at 2, and the plaintiffs have at the very least pleaded that the section of trail in question was closed at the time.  Whether the closure was temporary or permanent (and whether a trail can be "permanently closed" under the law of this state) is immaterial to the court's analysis of the defendants' motion.

assumed as a matter of law by those engaging in such activities, regardless of all safety measures taken by the ski area operators." N.H. Rev. Stat. Ann. § 225-A:1. Accordingly, the statute--as noted at the outset--contains an immunity provision for ski area operators, providing that:

> Each person who participates in the sport of skiing . . . accepts as a matter of law, the dangers inherent in the sport, and to that extent may not maintain an action against the operator for any injuries which result from such inherent risks, dangers, or hazards. The categories of such risks, hazards, or dangers which the skier or passenger assumes as a matter of law include but are not limited to . . . collisions with other skiers or other persons . . . .

Id. § 225-A:24, I. As interpreted by the New Hampshire Supreme Court, this provision "mean[s] that a ski area operator owes its patrons no duty to protect them from inherent risks of skiing," and, "[t]o the extent that a skier's injury is caused by an inherent risk of skiing, the skier may not recover from the ski area operator." Nutbrown v. Mount Cranmore, Inc., 140 N.H. 675, 680 (1996).

The question presented by the defendants' motion concerns the scope of this provision, which "supersede[s] and replace[s] a skier's common law remedies for risks inherent in the sport of skiing." Cecere v. Loon Mtn. Rec. Corp., 155 N.H. 289, 291 (2007) (quoting Sweeney v. Ragged Mtn. Ski Area, 151 N.H. 239, 242 (2004)). LMRC and Boyne argue that, because the plaintiffs

seek to recover for injuries resulting from a collision with another "skier,"[3] specifically identified by the statute as one of the inherent risks of skiing, this action falls squarely within the provision--irrespective of Patterson's status as a Loon Mountain employee--and is therefore barred. The plaintiffs, for their part, concede that "under ordinary circumstances," a skier-to-skier collision would constitute an inherent risk of skiing for which they could not recover. Opp. to Mot. to Dismiss (document no. 30) at 7. They argue, however, that Patterson's collision with M.H. "was not an inherent risk of skiing because Patterson violated the Ski Statute by ducking under a rope and traversing across a delineated, closed-off trail boundary." Id. at 2; see also id. at 5. LMRC and Boyne have the better argument.

Insofar as the Ski Statute provides ski area operators with an immunity limiting plaintiffs' common-law rights, it must be "strictly construed." Cecere, 155 N.H. at 291 (recognizing the

---

[3]It is true that, at the time of the collision, Patterson was snowboarding, and there are some differences between skiers and snowboarders: in general, "[s]kiers view snowboarders as a menace," while "snowboarders view skiers as Elmer Fudd." Dave Barry, Snow Immobile, Wash. Post, Feb. 12, 1995, at W40. Despite his preferred mode of descent, Patterson is considered a "skier" under the Ski Statute. See N.H. Rev. Stat. Ann. § 225-A:2, IX (defining "skier" as "a person utilizing the ski area . . . for ski, snowboard, and snow tube recreation and competition"); Cecere, 155 N.H. at 292-93.

canons of statutory interpretation requiring narrow construction of immunity provisions and statutes in derogation of the common law). Nonetheless, in interpreting the Ski Statute, this court applies the ordinary tools of statutory construction, "first examin[ing] the language of the statute, and, where possible, . . . ascrib[ing] the plain and ordinary meanings to the words used." Id. Here, the "plain and ordinary meaning" of the ski area immunity provision could hardly be clearer: it identifies "collisions with other skiers or other persons" as one of the "risks, dangers, or hazards which the skier . . . assumes as a matter of law." It makes no exception for collisions with skiers who are violating the Ski Statute, nor does it except collisions with ski area employees, even when those employees are themselves violating the Ski Statute or otherwise conducting themselves in a negligent or reckless fashion.

There may well be good reasons for the New Hampshire General Court to exclude those types of collisions from the inherent risks of skiing identified in the statute. But, though the General Court undoubtedly could have done so, it did not, and "where, as here, a statute's language is plain and ambiguous, the court . . . will not consider what the legislature might have said or add language that the legislature did not see fit to include." Dennis v. Town of Loudon, 2012 DNH 165, 25 (quoting

8

Cloutier v. City of Berlin, 154 N.H. 13, 17 (2006)) (internal quotation marks and alterations omitted).  And, in any event, it is entirely unsurprising that such exceptions are absent from the statute.  As the California Court of Appeal observed in a similar case when concluding that the plaintiff's claims were barred by the common-law doctrine of primary assumption of the risk (upon which the Ski Statute's ski area immunity provision is based, see Nutbrown, 140 N.H. at 680):

> [T]he inherent risks of injury from skiing down a snow covered mountain include accidentally careless conduct by other skiers resulting in collisions.  This risk is so inherent and obvious it goes without saying plaintiff assumed the risk no matter who the other skiers may be. . . . [The defendant ski area's] act of employing [the employee who caused the injury] and requiring him to be on the slope did not increase the risk of injury inherent in skiing.

Towns v. Davidson, 147 Cal. App. 4th 461, 469-70 (2007).  So too here.  The mere fact that M.H. collided with a ski area employee who was behaving negligently or recklessly does not remove the collision from the realm of skiing's inherent risks, at least as far as the statutory language is concerned.

In an effort to escape this conclusion, the plaintiffs point to case law holding that the Ski Statute does not grant immunity "to ski area operators who breach a statutorily imposed safety responsibility."  Rayeski v. Gunstock Area, 146 N.H. 495, 498 (2001) (citing Nutbrown, 140 N.H. at 683).  Section 225-A:24, the

9

plaintiffs note, imposes several safety responsibilities on skiers, which, they say, Patterson breached by his conduct:

- § 225-A:24, III provides that "[e]ach skier . . . shall conduct himself or herself, within the limits of his or her own ability, maintain control of his or her speed and course at all times both on the ground and in the air, while skiing, snowboarding, snow tubing, and snowshoeing heed all posted warnings, and refrain from acting in a manner which may cause or contribute to the injury of himself, herself, or others";

- § 225-A:24, V(c) provides that no skier shall "[e]ngage in any type of conduct which will contribute to cause injury to any other person"; and

- § 225-A:24, V(g) provides that no skier shall "[s]ki or otherwise access terrain outside open and designated ski trails and slopes or beyond ski area boundaries without written permission of said operator or designee."

The plaintiffs maintain that because (in their view) Patterson breached these responsibilities during the scope of his employment at Loon Mountain, LMRC and Boyne may be held vicariously liable for his breaches under the rule noted in the Nutbrown line of cases.

The plaintiffs, however, misread those cases. As the New Hampshire Supreme Court explained nearly 50 years ago, the Ski Statute "confers a right of action if the operator is in violation of the statute which imposes <u>duties by way of classifying slopes and trails and notices of closed trails and trails on which maintenance crews are working</u>." Adie v. Temple Mtn. Ski Area, Inc., 108 N.H. 480, 483 (1968) (emphasis added).

10

It is those duties, which are found in N.H. Rev. Stat. Ann. § 225-A:23, to which the court in Nutbrown was referring when it held that a ski area operator could be held liable for a breach of its statutory duties--not to the duties imposed on individual skiers by § 225-A:24.  See Nutbrown, 140 N.H. at 681, 683.  In the words of another judge of this court, "the legislature has specified the responsibilities of ski area operators in N.H. Rev. Stat. Ann. § 225-A:23 and the responsibilities of skiers . . . in N.H. Rev. Stat. Ann. § 225-A:24," and the immunity provision in § 225-A:24, I "does not relieve ski area operators of liability for injuries caused by a violation of their statutory duties under N.H. Rev. Stat. Ann. § 225-A:23."[4]  Gwyn v. Loon Mtn. Corp., 2002 DNH 100, 9-11 (Barbadoro, J.) (emphasis added).  Plaintiffs have cited, and this court has found, no case law holding that a ski area operator may be held liable for its employees' breach of the responsibilities set forth in § 225-A:24.

In arguing that LMRC and Boyne may be held liable for Patterson's breach of those responsibilities, then, the plaintiffs are inviting the court to recognize a basis for liability that finds no footing in either the language of the Ski

---

[4]Tellingly, although the plaintiffs quote this sentence from Gwyn in their memorandum, they have chosen to omit the emphasized segment.  See Opp. to Mot. to Dismiss (document no. 30) at 6.

11

Statute or the case law interpreting it--and which is, in fact, contrary to the plain language of the statute.  As another judge of this court observed when urged to recognize a novel exception to the Ski Statute's ski area immunity provision, "plaintiffs who select a federal forum in preference to an available state forum may not expect the federal court to steer state law into unprecedented configurations."  Payzant v. Loon Mtn. Rec. Corp., No. 94-cv-164, slip op. at 4 n.2 (D.N.H. Nov. 15, 1995) (Barbadoro, J.) (quoting Federico v. Order of Saint Benedict in R.I., 64 F.3d 1, 4 (1st Cir. 1995)).

 Even if this court had license to do that, though, it is doubtful that it could exercise that power in this case.  As LMRC and Boyne point out in their reply memorandum, our Court of Appeals has specifically declined to hold a ski area operator liable for its employees' alleged violation of the duties imposed by § 225-A:24.  Berninger v. Meadow Green-Wildcat Corp., 945 F.2d 4, 8-9 (1st Cir. 1991).  While the decision in Berninger was based primarily upon the court's interpretation of a single phrase in a subsection of § 225-A:24, its admonition that the class of individuals governed by § 225-A:24 "does not include a ski operator or its employees," id. at 9, sweeps substantially more broadly than that.  "[U]nless and until" the New Hampshire Supreme Court "has addressed a pertinent state law issue, a

12

federal district court is bound by First Circuit precedent" on that issue. Vertex Surgical, Inc. v. Paradigm Biodevices, Inc., 648 F. Supp. 2d 226, 231 n.3 (D. Mass. 2009) (citing Esquire, Inc. v. Esquire Slipper Mfg. Co., 243 F.2d 540, 544 (1st Cir. 1957)). This court, then, cannot simply disregard Berninger, unless an intervening decision of the New Hampshire Supreme Court has reached a contrary conclusion--and, as just noted, plaintiffs have identified, and the court has located, no such decision. (Indeed, although LMRC and Boyne discuss Berninger in their reply memorandum--and although the court granted the plaintiffs leave to file a surreply, see Order of Oct. 30, 2013--the plaintiffs made no attempt to reconcile their position with that case until oral argument.)

For the foregoing reasons, the court concludes that M.H.'s collision with Patterson was an "inherent risk, danger, or hazard" of skiing, despite Patterson's alleged violation of the responsibilities set forth in § 225-A:24. The court is sympathetic to the plaintiffs and their son; the collision was unfortunate and undoubtedly frustrating in that it was caused by a Loon Mountain employee. Because the plaintiffs' injuries resulted from an inherent risk of skiing, however, they "may not maintain an action against" LMRC or Boyne to recover for those

injuries.  N.H. Rev. Stat. Ann. § 225-A:24, I; see also Nutbrown, 140 N.H. at 680; Cecere, 155 N.H. at 296.[5]

## IV.  Conclusion

For the reasons set forth above, the defendants' motion to dismiss the plaintiffs' claims against them[6] is GRANTED.  The

---

[5]As a final aside, the court notes that the plaintiffs rely upon several extrajurisdictional cases in opposing the motion to dismiss.  See Opp. to Mot. to Dismiss (document no. 30) at 9-10) (citing Rusnak v. Walker, 273 Mich. App. 299 (2006); Jagger v. Mohawk Mtn. Ski Area, Inc., 269 Conn. 672 (2004); Clover v. Snowbird Ski Resort, 808 P.2d 1037 (Utah 1991)).  Those cases do not affect this court's ruling, for the following reasons:

- In the Rusnak case, the plaintiff did not seek to recover from a ski area, but from a fellow skier, so the court never had occasion to discuss the scope of ski area liability under Michigan's version of the Ski Statute (which, in any event, differs from the New Hampshire law).

- The result in the Jagger case was based upon an exemption from the Connecticut Ski Statute's ski area immunity provision that does not exist in the New Hampshire law.  That exemption denies ski area operators immunity for injuries "proximately caused by the negligent operation of the ski area by the ski area operator, his agents, or employees."  See Jagger, 269 Conn. at 674 n.4 (quoting Conn. Gen. Stat. § 29-212).  Indeed, the Jagger court itself noted this critical difference in rendering its opinion.  See id. at 696 n.20 (distinguishing N.H. Rev. Stat. Ann. § 225-A).

- While the Clover case is arguably more apposite than either of the other cases upon which the plaintiffs rely, the court finds it unpersuasive for the reasons discussed in Glover v. Vail Corp., 955 F. Supp. 105, 108-09 (D. Colo. 1997) (Babcock, J.), aff'd, 137 F.3d 1444.  This court cannot improve upon the analysis of the district court in that case, and adopts it wholesale.

[6]Document no. 28.

14

plaintiffs' claims against Patterson remain pending, as do the counterclaims against the plaintiffs by LMRC and Boyne.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: April 16, 2014

cc: Eric B. Goldberg, Esq.
    Michael B. Cosentino, Esq.
    Susan D. Novins, Esq.
    Mark D. Wiseman, Esq.
    Thomas B.S. Quarles, Jr., Esq.
    Leigh S. Willey, Esq.
    Margaret A. O'Brien, Esq.
    Kevin C. Devine, Esq.